THE CITY OF NEW YORK, Plaintiff, *v.* DYCKMAN MARKET TERMINAL CORPORATION and Others, Defendants, Impleaded with NORTHERN TERMINAL CORPORATION OF NEW YORK and JAMES N. BUTTERLY.

Supreme Court, New York County, July 7, 1927.

Municipal corporations — action by city of New York to eject defendants from possession of lands formerly under waters of Sherman's creek — evidence indicates property described in complaint lies inshore of mean high-water mark — mean high-water mark is only one to which city can claim title — city is not owner in fee of lands in question — complaint dismissed.

The complaint in this action by the city of New York to eject defendants from the possession of certain lands formerly under the waters of Sherman's creek must be dismissed, where the only map submitted in evidence, which indicates the position of the mean high-water mark, discloses that all the property described in the complaint lies inshore of the mean high-water mark and that mark is the only one to which the city can claim title to the lands. The city cannot be the owner in fee of the lands in question.

ACTION by the city of New York to eject the defendants from the possession of certain lands formerly under the waters of Sherman's creek to which they claim title.

*George P. Nicholson,* Corporation Counsel [*Willoughby B. Dobbs* of counsel], for the plaintiff.

*I. T. Flatto,* for Carnival Palace Corporation and Dyckman Market Terminal Corporation; *Roe, Lilly & Kramer* [*Charles J. Nehrbas, I. T. Flatto, Clinton T. Roe* and *John E. L. Beals* of counsel], for the defendants.

Gibbs, J.   The contention of the plaintiff is that the city of New York is the owner in fee of all the lands lying between high- and low-water marks on the island of Manhattan and that the property involved in this action is between these marks.   The defendants urge that all the lands under the waters of Sherman's creek were granted to the town of New Harlem by Colonial Governors and that the city never became seized thereof.   During the years 1666 and 1667 Governor Nicolls of the Province of New York granted to the freeholders of the town of New Harlem certain lands " eastward to the Town and Harlem River " together with all the " creeks   *   *   *   waters   *   *   *   in any wise appertaining " to said land.   In 1686 Thomas Dongan, Governor-in-Chief of the Province of New York, issued a charter to the city of New York granting to the city " All the waste, vacant, unpatented and unappropriated lands " within the city " extending and reaching to the low-water mark in and by and through all parts of said City of New York and Manhattan's Island aforesaid with all rivers, rivulets, coves, creeks, ponds   *   *   *   in the said City and Island."   There would appear to be some ambiguity as to whether the Nicolls grant conveyed to the freeholders of New Harlem title to the lands under the water of Sherman's creek extending to the low-water mark.   The Court of Appeals, however, in several cases has decided that the city of New York is the lawful owner of the lands under the water surrounding Manhattan island. (*Mayor* v. *Hart*, 95 N. Y. 443; *Sage* v. *Mayor*, 154 id. 61; *Jarvis* v. *Lynch*, 157 id. 445.)   In each of these cases the court in considering the Nicolls grant held that the lands between the high- and low-water marks were not conveyed to the inhabitants of New Harlem by that grant but rather to the city of New York under the Dongan charter.   It, therefore, follows that the question to be determined is: What lands under the waters of Sherman's creek does the city of New York own and is the property described in the complaint included in such lands?

Numerous maps have been offered in evidence purporting to define the low, high and mean high-water marks.   The plaintiff and the defendants agree that the mean high-water line is the only mark to which the city of New York can claim title to the lands in question.   This line is the boundary between the private uplands and the public lands under water.   The various maps offered by the plaintiff fail to define the mean high-water mark, nor does the testimony adduced from the numerous witnesses called establish with any degree of certainty the location of this imaginary line.   The defendants, on the other hand, have offered in evidence a copy of a map (Defendants' Exhibit A) prepared by

the dock department of the city of New York. It purports to be made in 1894, shortly after the city had opened and graded the streets in the locality involved in this suit. This map is the only one offered which indicates the position of the mean high-water mark. It is the only map the court can reasonably consider as indicating the dividing line between the private and public lands. A careful examination of this map discloses that all the property described in the complaint lies inshore of the mean high-water mark. Under these circumstances the city cannot be the owner in fee of these lands. The defendants are seized in fee simple of the property occupied by them, being the same property described in the complaint. Their chain of title is free from any title that the city can assert. The plaintiff having failed to establish title in the city of New York the complaint fails. The motions made by the defendants at the close of the trial are granted and a verdict directed in favor of the defendants.